Janice Hayes ROBINSON, Appellant,

v.

Hal S. ROBINSON, Appellee.

Appeal from Juvenile Court Dallas County.

No. 4007.

Court of Civil Appeals of Texas.

Waco.

May 31, 1962.

Henry Klepak, Thomas F. Nash, Dallas, for appellant.

Paul K. Hyde, Dallas, for appellee.

TIREY, Justice.

This cause involves the custody of a three year old boy and was tried without the aid of a jury. The Court, in its judgment, found substantially that the allegations contained in Plaintiff's Petition to change the custody of the minor from the defendant to the plaintiff were true, and that such relief should be granted. In the judgment there is this recital:

"The court further finds that Mr. Hal S. Robinson, Sr. is a single man and having read the Juvenile Department of Dallas County, Texas reports, is of the opinion that the paternal Uncle and Aunt, Mr. and Mrs. Jed Robinson of Richmond, Utah should have the the care, custody and control of the said child, and it is for the best interest of the said child." (The above report is not in the record.)

And the court awarded the care, custody and control of the minor to Mr. and Mrs. Robinson until the child reaches the age of 18 years, or until further orders of this court. The court overruled the motion for new trial and the cause is here for review.

The 4th point is substantially to the effect that the court erred in proceeding to trial of this cause without giving the appellant sufficient time to make her appearance before the court.

A statement is necessary. Upon request, the court filed Findings of Fact and Conclusions of Law. In the first paragraph of the Findings of Fact, we find pertinent to this discussion the following recital:

"* * * a Jury trial having been waived, and PAUL K. HYDE appearing for the Plaintiff, together with the Plaintiff, and JANICE HAYES ROBINSON appearing not but attorney of Record, GEORGE E. FLANNIGAN having withdrawn with per-

mission of the Court, the Court having been assured by Mr. Flannigan that the Defendant had been notified of the trial setting and Mr. Flannigan appearing in Court as amicus curiae on the day of the setting and telling the Court that the Defendant was available for trial and was waiting for call from him to know whether or not she should be in Court; whereupon, the Court told the amicus curiae that he should notify the Defendant immediately that the cause would be heard that morning, at which time the amicus curiae informed the Court that he would thusly notify the Defendant. After a lapse of approximately one hour to two hours, the cause was called and the Defendant appeared not and the Court proceeded to hear the evidence and examine the pleadings and, after hearing the allegations and proofs of the party, the witnesses for Plaintiff, the arguments of counsel, and being fully advised in the premises, the Court makes the following findings of fact and conclusions of law constituting the decision of the Court in said action."

In view of the disposition that we feel must be made of this cause, we see no necessity to state the specific Findings of Fact found by the Court, except to say they are sufficient to sustain the judgment of the Court entered.

Two witnesses were tendered by the plaintiff. Plaintiff himself took the stand and, according to his testimony, when the divorce suit was disposed of in August 1960, he made no contest to the award of the custody of the child to the mother. His testimony with reference to the conduct of his wife after the granting of the divorce charges his former wife with conduct unbecoming to a mother; but owing to the view that we take of the disposition that should be made of the case, we see no necessity to make further detailed statement as to this testimony.

The plaintiff tendered one other witness, Lillie Frances Thomas, who was the maid used by defendant after the divorce was granted, and her testimony corroborated the testimony of the husband.

Under the foregoing factual situation, did the trial court err in changing the care, custody and control of this three year old child from the mother without giving the mother an opportunity to be heard under this state of the record? It is our view that he did. In this instance, as always, the prime consideration of the trial court is and was the best welfare of the child. Ex parte Willig, a Minor, Tex.Civ.App., 314 S. W.2d 395, n. r. e. The Court could not discharge his duty in this behalf to the child without giving the mother an opportunity to be heard with reference to the serious charges that had been made against her character and conduct.

Our Supreme Court in State ex rel. Wood v. Deaton, 93 Tex. 243, 54 S.W. 901, made this statement of the rule for our guide:

"God, in his wisdom, has placed upon the father and mother the obligation to nurture, educate, protect, and guide their offspring, and has qualified them to discharge those important duties by writing in their hearts sentiments of affection, and establishing between them and their children ties which cannot exist between the children and any other persons. Especially is this the case with the mother. Parents cannot devest themselves of the obligation imposed upon them by their Creator, but, when they become disqualified for a proper discharge of such duties, civil government has the right, in the interest of the child, to provide for its proper nurture and education."

This court, in Oldfield v. Campbell, Tex. Civ.App., 191 S.W.2d 897, made the following statement which we think is pertinent here:

"The recently declared public policy of this state in dealing with dependent and neglected children is to secure for each 'such care, guidance and control, preferably in his own home, as will serve the child's welfare and the best interest of the state; and when such child is removed from his own family,

to secure for him custody, care and discipline as nearly as possible equivalent to that which should have been given him by his parents.' Art. 2338–1, Sec. 1 of Vernon's Tex.Ann.Civ.Stats."

Returning to the recital in paragraph 1 of the Findings of Fact, it is noted that the court was fully advised about Mr. Flannigan having been previously employed by defendant and that Mr. Flannigan had been allowed to withdraw from such representation by permission of the court, and the court found that Mr. Flannigan appeared before him on the date of the trial as amicus curiae.

■ Going back to the record, the divorce judgment was granted in August 1960, and the plaintiff filed his motion to change custody June 2, 1961. Flannigan filed his original answer for Mrs. Robinson June 30, 1961. He filed his motion to withdraw as attorney of record on August 11, 1961 and the Court on August 15, 1961 granted such permission. The judgment recites that the case came on for trial on the 5th day of September 1961. We find no pleading in the transcript by Flannigan, stating that he came to the court in the capacity as an amicus curiae when he appeared before the court on the 5th day of September 1961. However, since the Court found that Flannigan did, we must assume that Flannigan did so state to the Court that he was there in the capacity of amicus curiae.

On Motion for New Trial, Flannigan testified to the effect that Mrs. Robinson had been to his office some 2 or 3 days before the trial, and that he had accepted from her the sum of $150.00 in part payment of his fee, and that he had promised Mrs. Robinson that he would attend to the setting of the case and fully advise her about the setting, and that she should not come to court until he phoned her and advised her to do so. There is nothing in the record to indicate that Flannigan advised the Court that he had accepted the sum of $150.00 from Mrs. Robinson, but as we understand the Court's recital, heretofore set out, the Court was advised by Flannigan that Mrs. Robinson was in the city and that she was available and awaiting word from him as to when to come to court.

In response to appellee's counsel on cross-examination, Flannigan testified in part:

"Q. And also at that time you assured the Court as you left the courtroom, which was about 9:30, that you would immediately tell Mrs. Robinson to be present in the courtroom at once, did you not?

"A. I probably did, and that is exactly what I tried to do."

Our view of this factual situation is that regardless of whether Flannigan was in court on September 5th as amicus curiae or as attorney for defendant, is immaterial under the recital by the Court and the knowledge that the Court had that Mrs. Robinson was in the City of Dallas and that she was available and was awaiting instructions from Flannigan as to when to come to court.

The foregoing statement is based upon the rule in Texas that the primary duty of the court in child custody cases is to do what is for the best interest of the minor child, and the Court could not discharge this duty fully to the child by hearing only one side of this controversy. The child was entitled to have the Court see and hear the mother if she was available and in this instance she was, and ready to come to court immediately when instructed to do so. Under this undisputed factual situation it was the duty of the Court to recess the proceedings and give Mrs. Robinson an opportunity to be heard. It is our view that the Court's failure to recess this cause or reset it, as hereinabove indicated, was error, and that such error requires that this cause be reversed and remanded in order that the cause may be fully developed. It follows that we are of the view that the Court should have granted appellant's motion for new trial, and set his former judgment aside. In view of the fact that we

think this cause should be remanded, all other points pass out of the case. Reversed and remanded.

WILSON, Justice.

I concur in disposition only—not on the basis the court did not give the mother an opportunity to be heard. The court did give her such an opportunity. I think it might properly be held the motion for new trial should have been granted, under the record, to give her a further opportunity to be heard.